IN THE MATTER OF THE APPLICATION TO COMPEL WILLIAM O'BRIEN, EXECUTOR OF JANE BOYLE, DECEASED, TO ACCOUNT.

*Right of the next of kin to compel an administrator to return assets of the intestate converted by him — when the right cannot be enforced against the administrator's executor — liability of an executor to be compelled to account after the estate has been distributed under a decree — his liability to do so should not be determined on a mere motion.*

Jane Boyle, who had been appointed administratrix of her son Pierce, died about a year and a half after her appointment, without having rendered an account, although she had filed an inventory showing assets amounting to $3,772.03.

She left a will by which the appellant O'Brien was appointed her executor, who qualified and filed an inventory showing assets amounting to $13,000. He found no fund deposited to her credit as administratrix of Pierce, nor any specific property which could be identified as received by her in that capacity. Thereafter O'Brien advertised for and paid all claims presented, filed a petition for a judicial settlement and distributed the surplus, pursuant to a decree duly made on January 3, 1882, among the four children of Jane Boyle.

On March 14, 1884, Jane O'Brien, who was a daughter of Jane Bo e, was appointed administratrix *de bonis non* of the said Pierce. In December, 1884, certain grandchildren of Jane Boyle presented a petition praying the surrogate to compel O'Brien, as executor of Jane Boyle's will, to account for the funds which said Jane Boyle had received as the administratrix of her son.

*Held*, that the application was properly denied.

That as no assets of the estate of the son were proved to have been received by O'Brien the executor, except as mingled with and composing a part of Jane Boyle's own assets, the parties interested in the estate of the intestate had lost by the death of Jane Boyle their vested rights in the fund as owners of it, and their right to compel her to account for it, and, if it could not be found and identified, to charge her entire estate with an equitable lien for the amount thereof, and were remitted to the standing of mere creditors of her estate.

That they were only entitled to a distributive share of the intestate's estate, which share they had, so far as was shown, actually received under the decree entered upon the settlement of the executor's account.

In September, 1885, the same grandchildren moved to vacate the order denying the application upon the ground that it had been entered by default in consequence of the death of their attorney, before he had handed in his brief, as he had intended to do, although he had been heard orally by the surrogate, and the surrogate knew of his inability to submit a brief when he made the order. Upon the return of an order to show cause why the petitioner should not be allowed to submit a brief, the surrogate made an order vacating the prior order and requiring O'Brien to file an account.

*Held*, that he erred in so doing, as he thereby disposed of the merits raised by O'Brien's answer, which denied his liability to be compelled to account, upon a mere motion, while O'Brien claimed, and was entitled to, a hearing in the nature of a trial, and to have findings of fact and conclusions of law made by the surrogate.

That the proceedings should have been dismissed as the administratix *de bonis non* of the intestate son was not made a party to the proceedings.

APPEAL from a decree of the Surrogate's Court of Kings county, bearing date on the 30th day of December, 1886, settling an account.

The appeal also brings up for review the interlocutory decree of said Surrogate's Court, dated March 12, 1886, which compelled the appellant to render such account and set aside a previous decree made April 7, 1885, refusing to order such account. It also brings

up for review an order made on the 16th day of March, 1886, refusing to allow the appellant to introduce evidence in support of the allegations of his answer.

*Joseph A. Burr, Jr.*, for the executor. appellant.

*Samuel Cohn*, for the petitioners, respondents.

PRATT, J.:

Jane Boyle, at the time of her death, was the sole administratrix etc., of her son, Pierce T. Boyle, deceased, who had died intestate, leaving *no children*. She had filed an inventory showing assets amounting to $3,772.03. She claimed to be his creditor to the extent of $3,296.15, with interest. She had paid some $237.35 for his debts and funeral expenses since her appointment. Her claim was regularly made out and verified but it had never been judicially established, and she had never rendered an account or otherwise been discharged from the duties of her trust. It is said that she was about preparing her accounts, which had not been unreasonably delayed, when she suddenly died about a year and a half after her appointment leaving a will which was duly probated, wherein the appellant, O'Brien, was named as executor. He qualified and filed an inventory showing assets which amounted to some $13,000. He found no fund deposited to her credit as administratrix, nor does it appear that she left any specific property which could be distinctly traced and identified as having been received in her official capacity. In other words, if she had thus received such property, it must have been converted into money or other forms of property so that its identity was lost.

O'Brien duly advertised for claims against her estate, which notice expired June 20, 1881. He paid all claims presented, filed his petition for a judicial settlement of his accounts, upon which proper citations were issued, and, on January 3, 1882, a decree was made by a proper surrogate, passing, settling the same and directing distribution of the surplus in his hands. In pursuance of this decree he distributed that surplus, and it is not suggested that he failed in any duty enjoined upon him thereby.

It seems that this testatrix had, at least, four children, viz., Pierce, whom she survived; Mrs. O'Brien, the wife of the executor;

Patrick and Charles. Patrick died, leaving his widow, Helen, and Mrs. Green, Mrs. Williams, Catharine and Mary, his children. Charles died, leaving four children, Frances, Garret, Mrs. Tobin and Mrs. Brown. The case fails to show that either of these children died prior to the decree on the accounting hereinbefore referred to.

Some two years after the surrogate's decree and the distribution of this grandmother's estate, and on March 14, 1884, it appears that Jane E. O'Brien, the wife of the executor, was appointed administratrix *de bonis non* of the goods, etc., of Pierce T. Boyle. In the following December (1884), the children of Patrick united in a petition to the surrogate against O'Brien, the executor of their grandmother's will, praying that he should account for the funds which Jane Boyle, the grandmother, had received belonging to the estate of their Uncle Pierce, of which she was administratrix at her death. The children of Charles united in a separate and like petition at or about the same time. It would seem that Mr. Albert Roberts was the attorney for all these petitione.s. A citation was duly issued on these petitions returnable January 27, 1885.

The executor (O'Brien) answered these petitions setting up the foregoing facts. The issue thus joined was heard before Mr. Surrogate Bergen, April 7, 1885, and an order or decree was then made and entered denying the application to compel O'Brien to account.

Afterwards, and in September, 1885, these grandchildren made a motion before Mr. Surrogate Lott to vacate this order or decree. The theory of that application was, that Surrogate Bergen's order or decree had been entered by default in consequence of the death of the petitioners' attorney (Mr. Roberts). The fact was that Mr. Roberts had argued the motion orally before Mr. Surrogate Bergen, and Mr. O'Brien had also been heard orally by counsel. But the counsel had agreed to hand in briefs, and Mr. Roberts' sickness and death had prevented that. It also appeared, however, that Mr. Surrogate Bergen knew the fact of Mr. Roberts' inability to submit a brief, and made his order intelligently in its absence. The order to show cause by Mr. Surrogate Lott treats this order or decree of his predecessor as a default and requires O'Brien to show cause why petitioner should not submit a brief. He seems to have treated the matter as a mere default, and, on the hearing March 12,

1886, made an order vacating the prior order or decree of April seventh. This order also required O'Brien to file an account, thus disposing of the *merits* raised by O'Brien's answer as upon a mere motion. The latter insisted that that hearing was in the nature of a trial of the petitioners' right to an account, and he presented that and other questions by proper requests, which the surrogate refused even to entertain. We are asked to review the propriety of his disposition of that matter. Thereupon O'Brien filed an account in which he asserted that no property belonging to Pierce T. Boyle had ever come to his hands, the fact of Jane Boyle's inventory, her advertisement for claims, her payment of the $237.35 of debts and funeral expenses and her claim of $3,760.41 which was more than the total inventory valuation of the intestate's entire property.

The petitioners objected to this account, and the issue thus raised was tried. Proper requests were filed, findings were made, exceptions were taken to refusals and a decree was ultimately made December 30, 1886, adjudging that Jane Boyle's claim was not valid, and that at her death she was chargeable with the amount of the inventory of Pierce T. Boyle's estate ($3,772.03), with $1,332.31 interest; after deducting the $237.35 (without reckoning or allowing for interest on that), and that O'Brien *as her executor*, though not individually, was liable for $4,866.99. The ultimate object of and reason for this peculiar proceeding, as explained in the surrogate's memorandum opinion and on the argument before us, was to reach O'Brien *individually*, as a surety on Jane Boyle's official bond as administratrix, etc., of Pierce T. Boyle, the intestate.

We discover several objections which seem to us to be fatal to this decree. They will incidentally appear as we state the results of our examination of the rights of these petitioners. Let it be granted that Pierce T. Boyle left the sum named in the inventory filed by his mother as his administratrix, there would still seem, upon the undisputed evidence, to be an unanswerable objection to the petitioner's claim of any interest in that particular trust fund at the time of the death of the administratrix. The intestate left no children; he left no father; he left his mother, his brother and sister, and the children of Patrick. Under the statute of distributions, the mother took one-half the estate and the living brother Charles, and sister, Mrs. O'Brien, took each one-sixth, and the brother Patrick took

one-sixth, if he was alive, and it certainly does not appear anywhere in the case that he was then dead.

Perhaps it may be said that the omission of O'Brien's answer might cover the point that the petitioners were entitled to a distributive share of intestate's estate *then*, *i. e.*, at the date of the petitioners, if there was anything left of it, but the difficulty, as we shall presently see, is that there was nothing left of it. It had all been distributed under the statute. Let us see if this is not strictly true. It is undoubtedly the fact that O'Brien's answer denied the *receipt* of any assets of the estate of this intestate, and there was no proof that he did receive any such assets unless they composed a part of Jane Boyle's assets. All these moneys and securities stood in her individual name. Throughout the entire proceeding no specific article of other property was pointed out and identified which came from the intestate. At the very utmost, then, it must be said that the $3,772.03, the sum of the inventory, had been converted into money and mingled undistinguishably in the mass of property which stood in Jane Boyle's name. At any time during her life she might have been compelled to account for that $3,772.03 ; and, if she could not have traced and identified it, perhaps her entire estate might have been charged with an equitable lien for the amount thereof, and held in the interest of the distributees of Pierce T. Boyle until the representatives of that interest received their just due. But that was not done, hence at her death that right was lost, and the entire estate in her hands which could not be traced and identified was distributable and properly dealt with under the statute. (*Hooley* v. *Gieve*, 7 Abb. N. C., 271.)

The parties interested in the estate of the intestate were thus remitted to the standing of mere creditors of Jane Boyle's estate. (Id.) They thus lost their *vested rights in the fund as owners of it*, and were remitted to the rights of beneficiaries of O'Brien's official trust as executor of Jane Boyle's will — rights which did not give them any ownership of that fund as *distributees* thereof, as against them O'Brien was the owner of the entire fund *as executor*. O'Brien was their trustee to the extent of paying them as creditors, which is a very different thing from ownership of the fund itself, or giving them any right to a *distributive share* of the fund under the statute. Thus O'Brien's admission in his answer,

coupled with his denial that he ever received any assets which were a part of the estate of this intestate, and the failure of proof that he did receive any such assets, would seem to leave the petitioners without ground for a claim against him *as executor*. Their only standing was that they were entitled to a *distributive share* of the *intestate's* estate. But this is not all, for then came the notice by her executor (O'Brien) to Jane Boyle's creditors, the exhibition and payment of their claims, the proceedings for the accounting, the citations and the decree settling the accounts, adjudging the rights of all parties interested in the surplus, *and the actual distribution in pursuance thereof*. There is no suggestion of any irregularity or defect of parties to that proceeding, or that O'Brien had any notice of the present claim, either actual or sufficient, to put him on inquiry, unless it is to be implied from the allegations that he received assets which belonged to the first estate. For aught that appears, these petitioners were all of full age, and presumably they were parties to that accounting. We are, therefore, unable to see why the fund was not lawfully distributed, so that by their own neglect to assert their rights during Jane Boyle's lifetime, or at least prior to the distribution of her estate, these petitioners have suffered the court to wipe out their equity, even assuming that O'Brien did receive assets belonging to Pierce T. Boyle's estate, much less did they indicate any equity against Jane Boyle's sureties. Surely it would have been competent for them to have given O'Brien some notice of their claim under the notice to creditors. (Redfield on Sur. [2d ed.] ·525.) Failing in that they suffered this executor innocently to distribute the fund, and thus did they in a legal sense deprive Jane Boyle's sureties of the resource which would otherwise have protected them. And thus, whether we view the case with reference to the technical rights or ultimate object of these petitioners, it would seem to be without substantial merit.

We come, then, to the next difficulty in the case which relates to the manner in which Mr. Surrogate LOTT disposed of the merits of O'Brien's answer, which, as we have seen, alleged a clear defense to the duty of accounting at all. He made a mere order without findings of fact or conclusions of law. Indeed, he refused even to entertain request to that end. Was that proper? Certainly, if

instead of proceeding in the Surrogate's Court, these petitioners had filed their bill in equity for an account, the first question would have been whether or not he was bound to account. As against that claim his answer was "I never received any assets of Pierce T. Boyle's estate," and, second, "I have already accounted for everything which I did receive and have paid it out under a decree, and am thus discharged from any further duty as executor at all, and that decree binds and stops these petitioners." On such an answer in *an action* it would have been necessary to enter a formal judgment based on a "decision" containing findings and conclusions. If required to account it would have been an interlocutory judgment. If not required to account, it would have been a final judgment dismissing the action. In view of the new practice requiring "decisions" from surrogates, we fail to see why O'Brien was not entitled to that right in this case, which, in our view, would have resulted in a dismissal of the proceeding.

But there is another answer to this proceeding. The petitioners seem to have deemed it necessary *to plead* the appointment of Jane O'Brien as the administratrix *de bonis non* of the intestate. It is not unlikely it was made on their application. Certainly, if there was anything upon which such an appointment could operate, this new administratrix was the party entitled to receive the estate, and, therefore, she was primarily the proper party to file the application. How can these petitioners maintain such a proceeding unless she either refused to sue, or stood in such relations to O'Brien *as executor*, that a demand that she *should* proceed would have been a mere idle ceremony; she was not even made a party to the proceedings; this point does not go to the mere defect of parties. Such a demand, or an allegation and proof of circumstances which avoided its necessity upon general principles, was a condition precedent to the petitioner's legal standing to make this application. How could these petitioners, proceeding in her absence, have obtained a decree which would settle anything as between the estate of the intestate and Jane Boyle's estate; and yet this decree assumes to adjudge that Jane Boyle had no claim whatsoever.

We have not overlooked the provisions of paragraph 2606 of the Code and their supposed bearing on this question. They do not seem to us to meet the difficulties above suggested. The point still

remains that there was no proof that this executor ever had any assets which, in a legal sense, belonged to the intestate, and hence, that he held no property in trust for the petitioners *as distributees* of the intestate. And it may well be doubted if this section applies to this case in any view. But we do not deem it necessary to decide that point. Our conclusion is that it was error to refuse the executor's request submitted to Mr. Surrogate LOTT, in the first instance, and that class of exceptions in the case is, therefore, sustained. The decree of December 30, 1886, is, therefore, reversed with costs of this appeal, and the order of March twelfth is modified by limiting its effect simply to the right to a rehearing ; a new trial is unnecessary. The surrogate should simply complete the trial on the evidence which will thus be before him by passing on the requests presented by the executor, and by making a " decision " with findings and conclusions, in pursuance of the principles herein stated, and thereon enter a final order in each special proceeding, dismissing the same. The matter of costs of those proceedings will be left to his discretion.

BARNARD, P. J., and DYKMAN, J., concurred.

Judgment reversed with costs of appeal ; interlocutory judgment of the 12th of March, 1886, modified in accordance with opinion ; order of the 16th of March, 1886, reversed ; order to be settled by Justice PRATT.